**CHASE SAVINGS AND LOAN ASSOCIATION**
v.
**FEDERAL HOME LOAN BANK BOARD**
and
**Liberty Federal Savings and Loan Association.**
**Civ. A. No. 42224.**

United States District Court
E. D. Pennsylvania.
May 23, 1967.

Albert H. Friedman, Philadelphia, Pa., for plaintiff.

Sidney Salkin, Asst. U. S. Atty., Kenneth E. Scott, Max Wilfand and Raymond M. Klein, Washington, D. C., for defendant Federal Home Loan Bank Board.

Louis J. Goffman, Arthur S. Lorch, Philadelphia, Pa., for defendant Liberty Federal.

MEMORANDUM AND ORDER SUR MOTION BY PLAINTIFF FOR PRELIMINARY INJUNCTION (Document 2) AND MOTION BY DEFENDANT, FEDERAL HOME LOAN BANK BOARD, TO DISMISS THE ACTION (Document 9)

VAN DUSEN, District Judge.

This case is before the court on the Motion of Federal Home Loan Bank Board (hereinafter called "Board") to dismiss this action, which seeks, among other things, a preliminary injunction to prevent Board from giving effect to its Order No. 20,347 permitting the co-defendant, Liberty Federal Savings and Loan Association (hereinafter called "Liberty") to establish a branch office

at 1625 Wadsworth Avenue, Philadelphia, Pa.

The first hearing on the Motion For A Preliminary Injunction, filed March 9, 1967, was held March 13, 1967 (Document 5) and a continued hearing was held March 15, 1967 (Document 6). At that time, counsel for the Board reported that the Board wished to reconsider its Order No. 20,347 in the light of all relevant factors (p. 69 of Document 6) and counsel for both defendants stated they would file Motions to Dismiss. The assigned judge stated that he would decide such Motions on briefs, with the understanding that Liberty would give five days' notice before taking any action to open the proposed branch.[1] By letter of May 1, which is attached to this Memorandum and Order, the Board reaffirmed its Order No. 20,347.[2]

 Prior to October 6, 1966, § 5(d) (1) of the Home Owners Loan Act of 1933, as amended, provided that the Board had power to "be sued * * * and defend in any court of competent jurisdiction in the United States * * *" (12 U.S.C. § 1464(d) (1)), but P.L. 89–695,[3] in § 101(a), amended § 5(d) (1) to eliminate the above language and to provide that "the Board shall be subject to suit (other than suits on claims for money damages) by any Federal savings and loan association

* * *." The above-mentioned § 101(a) of P.L. 89–695 amended § 5(d) (14) of the Home Owners Loan Act to provide that "the terms 'Federal savings and loan association' * * * shall include any institution with respect to which the Federal Home Loan Bank Board now or hereafter has any statutory power of examination or supervision under any Act or joint resolution of Congress other than this chapter, the Federal Home Loan Bank Act, and the National Housing Act. * * *" 12 U.S.C. § 1464(d) (14)). Although plaintiff concedes that it is a Pennsylvania chartered savings and loan association, it contends that the above-quoted language should be construed to apply to it since a contrary interpretation is unreasonable and raises a question as to the constitutionality of this provision of P.L. 89–695 [see pages 14–18 of Plaintiff's Brief Contra Defendants' Motion to Dismiss (Document 10)]. However, the words "this Act" clearly refer to the "Home Owners Loan Act of 1933"[4] in view of the first sentence of § 101(a) of P.L. 89–695, and plaintiff has submitted no information in either of its briefs (Documents 10 and 12) to show that the Board has any statutory power of examination or supervision over it under any Act or joint resolution other than the Home Owners Loan Act of 1933, the Federal

---

**1.** This position was reaffirmed by Liberty in the attached letter of May 10, which concludes with this sentence:

"Likewise we assure the Court and Mr. Friedman that, as stated at the bar of the court on March 15, 1967, before taking any action to open the proposed branch, we will communicate with the court and Mr. Friedman at least five days before any such action is undertaken."

**2.** The last sentence of this May 1 letter reads as follows:

"In conclusion, the Board believes that Liberty can successfully satisfy a necessity for an additional savings and loan facility at the approved location and can do so without undue injury to existing institutions, including Chase."

As stated in the attached letter of May 8 from counsel for plaintiff, plaintiff has

agreed that this May 1 letter be considered "as a Supplemental Exhibit to the Complaint."

**3.** Prior to 1966, this court has emphasized the broad discretion granted to the Board in Bridgeport Fed. S. & L. Assn. v. Federal Home Loan Bank Bd., 199 F.Supp. 410 (E.D.Pa.1961), aff'd. 307 F. 2d 580 (3rd Cir. 1962), cert. den. 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963). The legislative history of P.L. 89–695 is found at 3 U.S.Code Cong. & Ad.News of 1966 (89th Cong., 2d Sess.), pp. 3532 ff.

**4.** This is also made clear by the marginal reference to 12 U.S.C. § 1461 opposite "this Act" on page 8 of the official copy of P.L. 89–695, which official copy bears the designation 70–323(497)0–66.

Home Loan Bank Act and the National Housing Act. Also, the Board's brief (Document 11) explains at page 5 (footnote 3) that this language was required to be sure that savings and loan associations chartered under the District of Columbia Code could fall under the definition. Finally, the inability of a state-chartered savings and loan association to sue in this court under the above language does not preclude it from suing the members of the Board individually where they can be served, if they are acting in violation of the Federal Constitution. See Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); M. G. Davis & Co. v. Securities and Exchange Commission, 252 F.Supp. 402, 403 (S.D.N.Y.1966); cf. Harrison-Halsted Com. Group v. Housing & Home Finance A., 310 F.2d 99, 106 (7th Cir. 1962).

It is noted that plaintiff does not answer specifically the following middle paragraph on page 3 of the Board's brief (Document 11) in its answering brief received May 15, 1967 (Document 12):

"The United States is immune from legal action unless it consents to be sued. Cohens v. Virginia, 19 U.S. (6 Wheat. 264, 411–412 [5 L.Ed. 257] (1821); Dalehite v. United States, 346 U.S. 15 [73 S.Ct. 956, 97 L.Ed. 1427] (1952). Without specific statutory consent, a suit against a Federal governmental agency is a suit against the United States and therefore barred under the doctrine of sovereign immunity. Declet v. Veterans Administration [D.C.] 129 F.Supp. 566 (1955). The Administrative Procedure Act, now codified in chapter 5 of title 5

of the United States Code, is not an implied waiver of all governmental immunity from suit. Blackmar v. Guerre, 342 U.S. 512 [72 S.Ct. 410] (1951). Consent to sue the United States is a privilege and Congress always retains the power to withdraw the consent at any time. Lynch v. United States, 292 U.S. 571, 581 [54 S.Ct. 840, 78 L.Ed. 1434] (1933)."

■ Furthermore, even if proper jurisdiction over a suable entity had been achieved, paragraph 2 of the above Motion to Dismiss presents an alternative ground requiring the dismissal of this action for improper venue. 28 U.S.C. § 1391(e) only applies where *"each* defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States" (emphasis supplied). Liberty does not qualify under any of the above-quoted language.[5] Plaintiff has not called the court's attention to any other section of Title 28 U.S.C., Chapter 87, giving this court venue over this action.[6]

The attached order dismissing the action for lack of jurisdiction and venue is easier for a court to enter in view of the cooperation of the Board in reviewing the matter between March and May 1 at the suggestion of the assigned judge.[7]

### ORDER

And now, May 23, 1967, it is ordered that the above action is dismissed, without prejudice, as to the defendant Federal Home Loan Bank Board for lack of jurisdiction and venue.

---

5. See pages 7 and 8 of the Board's brief (Document 11).

6. In view of the service of the Complaint made by certified mail on the Board, as shown by the Marshal's Return (Document 8), there is every reason to believe plaintiff is relying on 28 U.S.C. § 1391 (e).

7. This suggestion was made due to an inaccuracy in the Board's letter of February 24, 1967 (Exhibit B to the Complaint), which it seemed wise to refer to the attention of the Board.